UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81186-CIV-HURLEY/HOPKINS

**GLENN CARLO HOLCOMB, et al.,**

    **Plaintiffs,**

**v.**

**FEDERAL HOME LOAN
MORTGAGE CORPORATION,**

    **Defendant.**
_____/

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS THE
AMENDED COMPLAINT AND DENYING AS MOOT DEFENDANT'S
MOTION TO STRIKE COUNT TWO**

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, to Strike Count II of Amended Complaint for Violation of Florida Bar Rule 4-4.2(a) and Incorporated Memorandum of Law [DE # 39]. For the reasons to follow, the Court will grant in part and deny in part Defendant's motion to dismiss. Additionally, the Court will deny as moot Defendant's motion to strike.

**JURISDICTION**

This case was properly removed to federal court pursuant to 28 U.S.C. § 1441 as a case over which this Court would have original jurisdiction under 28 U.S.C. § 1331. Jurisdiction is also sufficient under 28 U.S.C. 1332(a)(1) based on complete diversity of citizenship and an amount in controversy in excess of $75,000.00. Venue is proper pursuant to 28 U.S.C. § 1441(a) because the state court from which the case was removed is located within the Southern District of Florida.

**BACKGROUND**

Plaintiffs Glenn Carlo Holcomb ("Mr. Holcomb") and Brenda McKinley Holcomb ("Mrs. Holcomb") (collectively "Borrowers") commenced this action on August 27, 2010 in state court seeking, *inter alia*, rescission of a consumer credit transaction and damages resulting from alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. The transaction, in which Borrowers refinanced their home mortgages and granted AFS Financial, Inc. ("AFS") a security interest in their home, took place on October 18, 2007. Subsequently, the note and mortgage were transferred such that they are now owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Lender"), which is the defendant in this action.

Wells Fargo Bank, N.A. ("Wells Fargo"), the loan servicer,[1] filed a foreclosure complaint on September 24, 2009. Borrowers then attempted to rescind the transaction by sending notices of rescission to AFS and Wells Fargo in January 2010, and to Freddie Mac in March 2010, pursuant to 15 U.S.C. § 1635. Borrowers based their rescission claim on alleged disclosure violations in the original transaction with AFS. Specifically, Borrowers allege that the disclosure statement in the initial transaction under-reported the total finance charge and amount financed. Borrowers allege that Wells Fargo, AFS, and Freddie Mac then failed to properly or timely respond to the notices and that Freddie Mac has thus far taken no action towards rescission of the transaction. Borrowers also sent a letter to Wells Fargo in January 2010 requesting the identity of the owner of the mortgage and note pursuant to 15 U.S.C. 1641(f) and did not receive a proper response.

---

[1] A loan servicer is the party responsible for receiving any scheduled periodic payments from a borrower according to the terms of a loan. 12 U.S.C. § 2605(i)(2), (3). Where, as in the instant case, the servicer is not the owner of the obligation, it is not treated as an assignee under TILA but is responsible for providing the borrower with the identity of the owner of the obligation upon request. 15 U.S.C. 1641(f).

In count one, Borrowers argue that they were entitled under TILA to rescission of the transaction based on the disclosure violations. They further argue that Lender's failure to grant rescission constituted an additional violation of TILA for which they seek statutory damages, actual damages, and attorney's fees. Borrowers also seek statutory damages, actual damages, and attorney's fees in count two based on Wells Fargo's failure to identify Freddie Mac as the owner of the mortgage and note, a violation they contend is attributable to Freddie Mac.

Lender responds that Borrowers' claims are baseless and serve only as a means to interfere with and delay the foreclosure proceeding pending in state court. In its motion to dismiss, Lender asserts, *inter alia*, various statutory defenses to liability under TILA. Lender also argues that it should not be required to comply with the procedures for rescission until Borrowers demonstrate an ability to tender the proceeds of the loan back to Lender as they would ultimately be required to do by 25 U.S.C. § 1635(b). Finally, Lender moves to strike count two of the Amended Complaint based on alleged violations of Florida Bar Rule 4-4.2(A).

## DISCUSSION

### A. Standard on Motion to Dismiss

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th

Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See, e.g.*, *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

### *B. Alleged Disclosure Violations in the Initial Transaction*

The dispute over the alleged disclosure violations in the initial transaction between Borrowers and AFS appears to turn on the answers to two questions. The first is whether under Florida law AFS should have used the statutorily prescribed substitution rate or reissue rate in calculating the title insurance premium charged for the transaction. If, as Borrowers argue, Florida law required the *substitution rate* to be charged, AFS's use of the higher *reissue rate* resulted in an overcharge that was not bona fide and reasonable. TILA would therefore require Lender to disclose such an overcharge, and AFS's failure to do so would constitute a disclosure violation. The second question is whether Lender charged the core title services premium *in addition to* the title insurance premium as alleged by Borrowers or merely as a constituent of the title insurance premium as Lender suggests. If the former, failure to disclose the overcharged amount as an additional finance charge would constitute another violation of TILA.

If either of these alleged disclosure violations occurred, several consequences arise. First and most plainly, the violations would provide a basis for this Court to order rescission of the transaction. Additionally, Borrowers would have been entitled to rescind the transaction when they initially

attempted to do so.[2] As a result, Lender's refusal to comply with a valid attempt to rescind would constitute an additional violation of TILA for which Lender may be liable for statutory damages and attorney's fees.[3]

As Lender conceded in its reply, Borrowers' allegations sufficiently take the issue regarding the finance charge calculations beyond the limited scope of a motion to dismiss. Def.'s Reply Supp. Mot. to Dismiss Pl.'s Am. Compl., at 10 [DE # 49]. For the purposes of the instant motion, the Court is unable to resolve which rate should have been used in calculating the title insurance premium. Similarly, any factual dispute regarding whether the core title services premium was paid separately from the title insurance premium must be construed in the light most favorable to Borrowers as the non-moving party. Therefore, the motion to dismiss cannot be granted on this basis. However, Lender has raised additional arguments that may preclude liability even if the Court assumes that the disclosure violations occurred.

### C. Assignee Liability Under TILA

In its motion to dismiss, Lender points to §1607 of the Act, which provides that a civil action for a TILA violation can be maintained against an assignee "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641. Based on this language, Lender argues Borrowers are precluded from obtaining a monetary judgment or attorney's fees as a result of the alleged violations. Lender cites several decisions in

---

[2] TILA explicitly authorizes rescission against an assignee. 15 U.S.C. § 1641(c). It is less clear whether TILA authorizes statutory damages and/or attorney's fees against assignees. *See infra* Part C.

[3] Otherwise, Plaintiffs' claims for damages and attorney's fees would be barred by the one-year limitations period included in the statute. 15 U.S.C. § 1640(e).

support of this position. *See, e.g.*, *Taylor v. Quality Hyundai, Inc.* 150 F.3d 689, 693 (7th Cir. 1998); *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994) ("Neither § 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice."). *See also Little v. Bank of America, N.A.*, 769 F. Supp. 2d 954, 968 (E.D. Va. 2011) ("Thus, in order to state a claim for attorney's fees against an assignee, the Plaintiff must allege TILA violations where are 'apparent on the face of the disclosure statement.'"). Other decisions support Lender's position with respect to statutory damages but not attorney's fees. *See, e.g.*, *Briggs v. Provident Bank*, 349 F. Supp. 2d. 1124 (N.D. Ill. 2004) ("[A] consumer who takes judicial action to establish a right to rescind can recover attorney's fees from an assignee."). Borrowers, meanwhile, urge the Court to adopt the reasoning in *Fairbanks Capital Corp. v. Jenkins*, in which the Court not only expressly held that attorney's fees are recoverable in "'any action' in which a right to rescind is determined to exist" but also opined that the same reasoning used in reaching that holding would "tend to support defendants' claim for statutory damages" as well. 225 F Supp. 2d 910, 917 (N.D. Ill. 2002). In dicta, the Eleventh Circuit has indicated some agreement with Lender's position. *See, e.g.*, *Parker v. Potter*, 232 Fed. Appx. 861, 865 (11th Cir. 2007) (finding that TILA "provides for civil liability against assignees only where a violation is apparent on the face of the disclosure statement."); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) (finding that mandatory language in consumer credit contracts apparently extending liability to assignees could not trump the plain language of the statute precluding such liability).

Having reviewed the aforementioned case law and other decisions presented by the parties, the Court finds that the plain language of the statute best supports Lender's position that neither civil

damages nor attorney's fees are recoverable against an assignee when the disclosure violations are not apparent on the face of the disclosure document. Section 1641(a) plainly limits any civil actions under TILA against assignees to those in which the violation is apparent on the face of the disclosure statements "[e]xcept as otherwise *specifically* provided" (emphasis added). Section 1641(c) provides such a specific exception by explicitly authorizing rescission "against any assignee." Section 1640(a)(3), by contrast, allows the recovery of attorney's fees "in any action in which a person is determined to have a right of rescission under section 1635" but does not explicitly make attorney's fees recoverable against an assignee. Although it may be true, as other courts have observed, that declining to allow attorney's fees in successful actions for rescission against assignees undermines the policy aims of TILA by making it more difficult for consumers to take advantage of its protections, the Court will not defy the plain meaning of a statute in an attempt to make it more effective and thus take on a legislative rather than judicial function.

### D. *Whether Violations Are Apparent on the Face of the Disclosure Statement*

Having determined that assignees can only be liable for rescission if the violation for which the action is brought "is apparent on the face of the disclosure statement," the next relevant question is whether Borrowers have alleged facts in support of the conclusion that the disclosure violations were apparent on the face of the disclosure statement. TILA provides that "a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. § 1641(a). Courts have held that a violation is apparent if it is "obvious, evident, or manifest; . . . open to view, plain, [or] patent." *Ritter v. Durand Chevrolet, Inc.*, 932 F.

Supp. 32, 35 (D. Mass. 1996) (internal citations omitted); *See e.g.*, *Little*, 769 F. Supp. 2d at 968 (finding failure to disclose the date on which the rescission period would expire on a document entitled "Notice of Right to Cancel" to be a violation apparent on the face of the disclosure document). In contrast, a disclosure violation is not apparent on the face of the disclosure statement when it is apparent "only by virtue of special knowledge, whether about the practices of other firms . . . or its own practices." *Balderos v. City Chevrolet*, 214 F.3d 849 (7th Cir. 2000).

Borrowers' only specific allegation on this point is in paragraph thirty-three of the amended complaint, which states as follows: "The violations are apparent on the face of the disclosure statement and other documents that are customarily involved in originating residential mortgages." Am. Compl. ¶ 33, at 9 [DE # 38]. This allegation is a conclusory statement that a certain requirement of Borrowers' cause of action is met. Without more, such an allegation is insufficient to meet the standard required to survive a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (finding dismissal appropriate when a complaint contains merely "a formulaic recitation of the elements of a cause of action"). Additionally, even taking this allegation as true, the fact that the "violations are apparent on the face of the disclosure statement *and other documents that are customarily involved in originating residential mortgages*" is insufficient under the rule, which requires that the violations be apparent on the face of the disclosure statement and other assigned documents alone. *See Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 197 (3d Cir. 2000) (finding an allegation that violations were obvious "on the face of the installment sales contract *or from other related documents*" insufficient to state a claim for assignee liability under TILA) (emphasis added). Whether other documents "customarily involved" in the type of transaction at issue would make the alleged violations apparent is irrelevant without an allegation

8

that those documents were actually assigned to Lender. This is true even if the other documents were *provided to* the assignee without being assigned. *Id.* at 198 ("A document transferred but not assigned cannot qualify even under a liberal construction of the statute."). As stated by the Eleventh Circuit, "resort to evidence or documents extraneous to the disclosure statement" is forbidden by the plain language of the statute. *Ellis*, 160 F.3d at 709.

Turning to the particular violations alleged, they do not appear to be of the sort that would be readily apparent on a disclosure statement. As discussed in Part B *supra*, the existence of the violations is at present uncertain. One issue that will determine if a violation was committed is whether the substitution rate or reissue rate was appropriate and whether any overcharge resulting from applying the inappropriate rate was not "bona fide and reasonable." Borrowers have not demonstrated how an assignee would be able to make such a determination by reference only to the disclosure statement and assigned documents.[4] Similarly, the disclosure statement alone cannot resolve whether Borrowers were double-billed for the core title services premium.

In light of the foregoing, Lender can only be liable under TILA for rescission of the transaction because the alleged violations were not apparent on the face of the disclosure document. On this basis, Borrowers' claims for monetary damages and attorney's fees will be dismissed. Borrowers may reassert this claim only if they can properly allege facts demonstrating that the alleged violations were apparent on the face of documents actually assigned to Lender.

### E. Plaintiffs' Ability to Tender Loan Proceeds

---

[4] Even if the violations would be apparent on the face of the disclosure statement taken together with certain publicly available information, this is not sufficient under the statute. *See Green v. Levis Motors, Inc.*, 179 F.3d 286 (5th Cir. 1999) ("Although Louisiana's fee tables may be available to the public, those tables do not constitute, according to § 1641(a)'s text, 'documents assigned . . . .'").

Although Lender cannot be liable for monetary damages under TILA as an assignee, Borrower may nevertheless obtain rescission pursuant to § 1641(c). Lender, however, argues that before the Court proceeds to determine whether in fact Borrowers are entitled to rescission, the Court should first require Borrowers to show an ability to tender back the loan proceeds as would be required as part of the statutorily prescribed procedure for rescinding the transaction. Borrowers, meanwhile, urge the Court to modify the procedure for rescission to allow repayment under "reasonable terms" and further allege that if the Court is unwilling to do so they are financially able to comply with the tender obligation under TILA.

The procedure for rescission is set out in § 1635(b), which provides that after the obligor (or borrower) has rescinded the transaction by notifying the creditor (or lender) of his intent to do so, the creditor must return any property given by the obligor within twenty days. Meanwhile, "[i]f the creditor has delivered any property to the obligor [as part of the transaction], the obligor may retain possession of it." It is only "[u]pon the performance of the creditor's obligations under this section" that the obligor must tender the loan proceeds back to the creditor. The statute further provides that these procedures "shall apply except when otherwise ordered by the court," giving courts considerable flexibility to modify the procedures for rescission to best meet TILA's purposes.

The Eleventh Circuit addressed the tender requirement of the rescission procedures under TILA in *Williams v. Homestake*, 968 F.2d 1137 (11th Cir. 1992). The court identified two chief concerns a court should consider when deciding whether to exercise its ability to modify the rescission procedure set forth in the Act. "Though one goal of the statutory rescission process is to place the consumer in a much stronger bargaining position, another goal of § 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction." *Id.* at 1140. In

10

balancing these concerns, courts should also consider "traditional equitable notions" such as "the severity of [the] violations and whether [the obligor] has the ability to repay the principal amount." *Id.* at 1142. Courts have also considered judicial economy in determining whether to modify the rescission process, as urged by Lender in the instant case. *See, e.g.*, *Angel v. BAC Home Loan Servicing, LP*, 2010 WL 4386775, at *6 (D. Haw. Oct. 26, 2010).

Unsurprisingly given the broad discretion reposed in the courts, a considerable variety of opinion exists as to whether plaintiffs must allege ability to repay loan proceeds to state a claim for rescission under TILA. *See, e.g., id.* (dismissing a TILA rescission claim for failure to allege an ability to tender); *Augustin v. PNC Fin. Servs. Group*, 707 F. Supp. 2d 1080, 1090 (requiring no allegation of an ability to repay to survive a motion to dismiss). In the instant case, Borrowers have plainly alleged an ability to repay [DE # 38, ¶ 45] but have not provided any particular facts in support of this allegation. For the purposes of this motion to dismiss, the Court is satisfied by Borrowers' allegation. Although evidence of ability to repay the loan proceeds may be required before rescission is granted, at the pleading stage Borrowers' allegation will suffice.[5] Thus, the motion to dismiss the rescission claim on this basis will be denied.

### F. Count Two of the Amended Complaint

In count two of the Amended Complaint, Borrowers assert that Wells Fargo, the loan servicer, failed to respond to Borrowers' request for information about the owner of the obligation

---

[5] To require Borrowers to show ability to repay at the pleading stage would assume that the Court would not allow repayment over time when determining whether and how to modify the statutory framework for rescission, a possibility the Court does not wish to foreclose at this stage of the proceeding. *See, e.g.*, *Lomboy v. SCME Mortg. Bankers*, 2009 U.S. Dist. LEXIS 44158 at *19 (N.D. Cal. May 26, 2009). However, in light of Borrowers' bankruptcy and other facts calling into question their financial strength, the Court will be mindful of the tender requirement as the case proceeds, and Borrowers should not plan to depend upon modification of the statutory framework.

as required by § 1641(f)(2).[6] Borrowers further argue that Lender is liable for this failure because Wells Fargo is its agent. At the outset, Lender points out that § 1641(f)(2) does not create any independent liability for creditors or their assignees because it refers only to an obligation of loan servicers. Lender next responds that because a servicer, despite the obligations imposed by § 1641(f)(2), cannot be liable for a TILA violation (except in circumstances not at issue here), there can be no primary liability to attribute to Lender through agency principles. In addition, Lender points out that TILA itself contains no provision for vicarious liability. Finally, Lender moves the Court to strike this count for violations of Florida Bar Rule 4-4.2(a).

TILA presents an apparent conundrum by imposing an obligation on servicers to provide information on request but also absolving servicers of any liability under TILA where the servicers are not also the owners of the obligations. At least one court has attempted to rectify this issue by allowing for the possibility of agency liability under TILA in precisely the way Lender opposes. *Consumer Solutions REO, LLC v. Hillery*, No. C-08-4357 EMC, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) ("[G]iven that the servicer cannot be held liable for damages for a § 1641(f)(2) violation, and the very nature of such a violation implies the debtor will not know the identity of and contact information for the owner of the note, the debtor would be left essentially without a remedy absent some form of vicarious liability."). The court in *Hillery* also noted that TILA, as a remedial statute, is entitled to liberal construction. *Id.* at *5.

However, the Court must also take note of Congress's own approach to rectifying the problem, which has not been to apply agency principles to TILA but rather to add provisions

---

[6]"Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation . . . ." 15 U.S.C. § 1641(f)(2).

imposing an affirmative duty on transferees—including assignees—to notify borrowers in writing of the transfer. 15 U.S.C. § 1641(g). Added as part of the 2009 amendments to TILA, § 1641(g) provides that "the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." This approach ensures access to information without increasing the risk that some lenders would use information requests under (f)(2) as a means to "gain leverage rather than an attempt to gain information."[7] *In re Carlton*, 2011 WL 3799885 (Bkrtcy. N.D. Ala. Aug. 6, 2011). While the court is certainly mindful of the "disastrous effects" failure to disclose can have on a lender's ability to exercise the rights created under TILA, these effects do not appear to be at issue in the instant case where alternative means of obtaining the same information existed and Borrowers have not alleged any actual harm resulting from the delay in disclosure.

Thus, the Court declines to expand liability for violations of § 1641(f)(2) beyond that indicated by the text of the statute and thereby increase the risk that lenders might "convert TILA from a shield protecting consumers into a sword allowing them to strike lenders who have followed the statute and its regulations as closely as logic permits" by making improperly motivated requests for information.[8] *Hefferman v. Britton*, 882 F.2d 379, 382 (9th Cir. 1989). The Court cannot say that Congress intended to make creditors and assignees liable under § 1641(f)(2) as Borrowers suggest, and although the resulting difficulties in enforcing (f)(2) are alarming, the Court notes that Congress has attempted to address these concerns by imposing distinct duties on creditors and

---

[7] This appears to be the concern animating defendant's motion based on violation of Florida Bar Rule 4-4.2(A), which is addressed below.

[8] The court takes care to point out that it reaches no determination as to plaintiffs' intent in the instant case, nor is it influenced by defendant's allegation in that respect. Rather, the court is merely observing potential consequences of adopting alternative approaches to enforcing TILA.

assignees rather than by expanding (f)(2)'s reach. Additionally, even if vicarious liability did apply as between Wells Fargo and Lender, it remains unclear what liability would transfer given that Wells Fargo itself bears no liability under the facts alleged. Therefore, the Court agrees with Lender that it cannot be liable under § 1641(f)(2) for Wells Fargo's failure to respond to Borrowers' request under these circumstances and will grant Lender's motion to dismiss with respect to count two of the Amended Complaint. Based on its decision to dismiss count two, the Court will deny as moot Lender's motion to strike the same.

## CONCLUSION

In light of the foregoing, Lender's motion to dismiss will be granted in part and denied in part, and Lender's motion to strike will be denied as moot. Borrowers' claims for monetary damages and attorney's fees and costs in count one of the Amended Complaint must fail as a matter of law because Lender is an assignee and Borrowers have not shown that the alleged violations were apparent on the face of the disclosure statement and other assigned documents. Borrowers' claim against Lender based on Wells Fargo's violation of § 1641(f)(2) must also fail for the reasons outlined above. However, Borrowers may continue to pursue rescission of the transaction because the question whether the alleged violations actually occurred is beyond the scope of a motion to dismiss and because Borrowers have sufficiently alleged an ability to repay the loan proceeds as required for rescission for the purposes of the instant motion.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's motion to dismiss [DE # 39] is **GRANTED** in part and **DENIED** in part.

2. Plaintiffs' claims for damages and attorney's fees in count one of the Amended

Order Granting in Part Defendant's Motion to Dismiss and Denying as Moot Defendant's Motion to Strike
Holcomb v. Federal Home Loan Mortg. Corp.
Case No. 10-81186-CIV-HURLEY/HOPKINS

    Complaint are **DISMISSED**.

3. Count two of the amended complaint is **DISMISSED.**

3. Defendant's motion to strike count two of the Amended Complaint is **DENIED AS MOOT**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 26th day of October, 2011.

                Daniel T. K. Hurley
                United States District Judge

*Copies provided to counsel of record*